Coogan *vs.* State.

P. J. COOGAN, PLAINTIFF IN ERROR, *vs.* THE STATE *Ex Relatione* THE ATTORNEY GENERAL, DEFENDANT IN ERROR.

M. CHAMPLIN, PLAINTIFF IN ERROR, *vs.* THE SAME.

G. ADDISON, PLAINTIFF IN ERROR, *vs.* THE SAME.

Under Section 1 of the Act of August 15, 1868, "regulating the tenure of certain offices," &c., the City Council of Charleston had power, in May, 1869, to vacate, by Ordinance, municipal offices whose incumbents held under elections by the City Council, and appointments by the Commanding General of the District, held and made in 1866 and 1867, and to fill the vacancies thus created by the election of their successors.

Municipal officers, elected by a City Council, during the existence of the Provisional Government, were within the terms of the Act, as municipal officers elected under the late Provisional Government.

The Act itself, on and after its passage, became the authority by which the incumbents of the offices embraced within its terms held their respective offices, and, as that authority empowered them to hold only "until their several offices are filled," &c., upon any one of the offices being filled by the appointment, or election, and qualification of a successor, the incumbent, *ipso facto*, ceased to hold.

BEFORE THE CHIEF JUSTICE, AT CHAMBERS, SUMTER, SEPTEMBER, 1869.

These were writs of error to the Circuit Court for the County of Charleston.

The facts out of which the application in Coogan's case arose, the pleadings therein, and the questions of law involved, fully appear in the judgment of the Judge below. That judgment is as follows:

MOSES, C. J. An information in the nature of the *quo warranto*, on the relation of the Attorney General, was filed on the 3d day of September, 1869, against Patrick J. Coogan, requiring him

to show cause by what authority he exercises the office of Assessor of the city of Charleston.

The information sets forth the election of William N. Hughes, by the City Council, on the 11th day of December, 1867, to fill the unexpired term of David C. Gibson, deceased, who had been elected to the office on the 20th of November, 1866, for four years, the term affixed by the Ordinance of December, 1858, (3 C. O., 78,) and the appointment, *vice* the said Gibson, on the 24th of December, 1867, by the General then commanding the Second Military District, by authority of the Reconstruction Acts of Congress; that he entered on the discharge of the duties, and continued therein until the 19th day of July, 1869, when the office, and all the books and papers pertaining thereto, were taken possession of, and he, the said William N. Hughes, excluded therefrom by the said Patrick J. Coogan, who has since continued to exercise the duties of the said office in violation of law, and in derogation of the rights of the said William N. Hughes.

The return of the said Patrick J. Coogan submits:

1st. That, by Section 2 of an Ordinance entitled " An Ordinance to declare vacant certain offices, and to provide for an election for the same," ratified by the City Council of Charleston, on the 20th day of May, A. D. 1869, the office of City Assessor, then, and prior to that time, filled by William N. Hughes, was declared vacant.

2d. That, on the 6th day of July, A. D. 1869, public notice thereof of ten days having been given in a city newspaper, the City Council of Charleston, at a regular meeting, did proceed and duly elect to the office of City Assessor the said Patrick J. Coogan.

3d. That, on the 10th day of July, A. D. 1869, the said Patrick J. Coogan, having first given bond, with good security, approved by the City Council, in the penal sum of one thousand dollars, conditioned for the faithful discharge of the duties of his office, was duly qualified, by taking the oath of office required by law, and commissioned as City Assessor for the city of Charleston.

4th. That, on the 15th day of July, A. D. 1869, the said Patrick J. Coogan made due and formal demand upon William N. Hughes, late City Assessor, to vacate and surrender the said office of City Assessor to him, said Patrick J. Coogan, and all property, books and papers pertaining thereto; and the Hon. Gilbert Pillsbury, also, on said 15th day of July, A. D. 1869, as Mayor of the city of Charleston, notified and directed the said William N. Hughes to vacate and surrender the office of City Assessor, with all the

property, books and papers pertaining thereto, to said Patrick J. Coogan; that the said William N. Hughes, utterly disregarding the said demand of the said Patrick J. Coogan and the said order of the said Hon. Gilbert Pillsbury, Mayor of the city of Charleston, did neglect and refuse to vacate and surrender said office of City Assessor for the City of Charleston, and the property, books and papers pertaining thereto, to said Patrick J. Coogan.

5th. That, on the 19th day of July, A. D. 1869, the said William N. Hughes being absent therefrom, the Hon. Gilbert Pillsbury, Mayor of the city of Charleston, instructed and directed said Patrick J. Coogan, City Assessor, quietly and peaceably to take possession of the public office of the City Assessor (the same being the property of the City of Charleston, heretofore occupied by the City Assessor,) and all the public property, books and papers pertaining to said office of City Assessor, and to enter upon and discharge the duties of said office; that, pursuant to said instructions of the Mayor of the city of Charleston, and by virtue of his said office of City Assessor, the said Patrick J. Coogan did, peaceably and quietly, take possession of the public office, property, books and papers pertaining to said office of City Assessor, and did enter upon and discharge the duties of said office, and the same hitherto and now continues to do, as by law he is entitled to do.

To this return the relator demurred, and the respondent has joined in the demurrer.

The manner of the actual taking possession of the office, books, &c., is not involved in the question before me. I am alone to consider and determine whether the respondent is entitled to the office, and the administration of its functions, by virtue of law.

The City Council, under the powers conferred by the Act of 1783, (7 Stat. at Large, 99,) "was authorized to appoint such officers as shall appear to them requisite and necessary for carrying into effectual execution all by-laws, rules and Ordinances they may make for the good order and government of the city."

In 1842, the officer theretofore known as City Inquirer and Assessor, was, by Ordinance, to be called and designated as City Assessor, and, by Ordinance of December 7, 1858, the term thereof was fixed for four years.—1 C. O., p. 13; 3, p. 78.

On the 10th of October, 1826, the Council passed an Ordinance subjecting any of its officers to removal by the votes of seven or more of its members, "for such cause as to them shall seem sufficient, after full hearing of the case." By the Ordinance of October

19, 1859, the number was extended to nine, and the words "for such cause as to them shall seem sufficient, after a full hearing of the case," were repeated and retained.—1 C. O., p. 26; 2, p. 90.

On the 20th May, 1869, an Ordinance was passed entitled "An Ordinance to declare vacant certain offices, and to provide for an election for the same." The second Section includes the office in question, and is in the following words: "That all offices now filled by military appointment, or by election of any provisional Council, are hereby declared to be vacant, and the same shall be filled by election at the time hereinafter designated." The fifth Section repeals all Ordinances or parts of Ordinances inconsistent with the same.

It is by force of this Ordinance, and the subsequent election of Mr. Coogan, that he now claims the office.

It will not be questioned that, to the extent conferred upon the corporation of Charleston by its charter, the Council has the right to legislate in all matters incident to the due and proper execution of the power delegated to it by that instrument. Nor will it be disputed that, where an office is created by statute, it is within the control of the Legislature. A corporation, in relation to its officers, may exercise the same power. In other words, the election to an office (not established by the Constitution of the United States or a State) confers no vested interest in the sense that such an interest is understood as resulting from a personal obligation or contract. The authority which calls the office into existence may add to, diminish, vary and modify its duties, compensation, and all the incidents attaching to it. Nay, it may abolish the office itself, and thus terminate it. These are all acts of legislation, incident to the power of appointment, which implies that of removal, in the absence of constitutional limitation or restriction. I do not understand the case, *ex parte Hennen*, as going farther.—13 Peters, 330.

A mere ministerial officer, appointed *durante bene placito*, may be removed without any other cause than that the pleasure of those who appointed him is determined; and it is unnecessary to resort to notice and formal assertion, for the appointment of another to office is sufficient. The right in these cases to remove is incidental to that of appointment.—Wilcox, 253.

There is a difference to be observed where the time is limited by law. If it is to continue solely at the pleasure of the appointing power or the officer, (as in *Hennen's* case,) it may be terminated at the will of either, even without notice. If the period of its dura-

tion is prescribed, its tenure may be changed, either by extension or diminution, by the authority which originally fixed it.

In *Smith* vs. *Latham*, the Court clearly recognized the distinction between offices, the term of which was to exist only at pleasure and those where the tenure was fixed to a determinate period—and the fact as to the duration was to be gathered from the language of the statute creating the particular office.—9 Bing., 679.

In *Avery* vs. *Inhabitants of Tyryngham*, Parsons, C. J., says: "It is a general rule that an office is holden at the will of either party, unless a different tenure be expressed in the appointment, or is implied by the nature of the office, or results from ancient usage."—3 Mass., 177.

In the case of *Butler* vs. *Pennsylvania*, the question before the Court was whether the original appointment for a certain period entitled the party, during his continuance in office, to the compensation originally fixed, and which was afterwards reduced by the Legislature. The right of the Legislature to transfer the appointment from the Governor to an election by the people, was not one of the points submitted in the cause. In fact, while the Act of 18th April, 1843, changed the compensation, it was not to go into effect, by its provisions, until the second Tuesday in January following. The term, therefore, of the officers remained virtually untouched.—10 Howard, 402.

In *Conner* vs. *New York*, it was held that the term, the mode of appointment and the compensation may be altered at pleasure, by the Legislature, where the office was created by statute.—2 Sandf., 355.

These are all legitimate acts incident to legislative power. The term and the compensation may be changed, the office may be abolished before the expiration of the period for which the incumbent was appointed, if no constitutional inhibition prevents. To vacate an office during the term, and provide for an election to supply the vacancy thus made, is not an alteration of the tenure: That remains fixed. The duties presented continue as they existed before, and the sole object and effect of the Act is to remove the officer.

The removal of an officer, however, is a judicial act, and where he holds, and is in the exercise of the office, (as admitted here by the return,) he cannot be displaced without a due observance of those safeguards which the law has provided as a check and restraint against unlawful authority, on the part of power, against

one to some extent occupying an inferior position, because a position originally bestowed from favor.

If the Ordinance fixes the term of office, although an incident to the appointment, the right of removal is, by implication, reserved; yet, as this is a judicial act, it must be exercised in due conformity with the rules and regulations which attach in the conduct of a controversy, having in its attendants and consequences the characteristics of a trial. It is not to be understood that the same precision and nicety are to be exacted in the mode and form in which the allegation is to be preferred, or in the manner of conducting the investigation, as are demanded and observed in Courts of justice, but the character of the charge should be made known to the accused, and the opportunity of defence afforded. The Council appear to have recognized and appreciated this obligation, for, by the Ordinance heretofore referred to, while every officer was regarded as subject to removal, at any time, by the votes of nine or more members of the Council, for such causes as to them shall seem sufficient, it was not to be ordered without a full hearing of the case. The technical word "case" is employed, and a hearing implies a consideration of the facts on which the same ground may be based—the testimony and the defence—and this is in nature of a judicial proceeding, with all the incidents belonging to it.

If this condition, in favor of the officer, had not been expressed in the Ordinance, and if, in fact, it had contained no provisions in regard to removal, I should yet hold that the assertion, in the manner in which it was attempted to be enforced, was against law and common right.

A corporate officer cannot be removed without cause, though the charter says, generally, "he may be removed."—Com. Dig., Franchise F., 32.

In *Murdoch* vs. *Phillips' Academy*, it was held "that the removal of a professor is a judicial proceeding, and, to render it binding on him, there must be a notice to appear—a charge—opportunity to submit testimony and defend himself."—12 Pick., 241.

An expulsion of a member, without notice to him, was held unlawful, though the charter provided that, if any member should, for three months, neglect to pay his arrearages, he should be expelled—*Commonwealth* vs. *Penn. Ben. Society*, 2 S. & R., 141.

"In general, the rule is that every officer, before amotion, shall be summoned and heard in his defence, before the body in whom is vested the power of amotion; but this rule is subject to various

necessary exceptions arising from the presence of circumstances which would make it useless to apply it."—Grant on Corporations, 245.

"As where the party has abandoned the office, or were present at the meeting of the removing body called for the purpose of removing him, and he defends himself before it, and where, generally, the circumstances show that the party has waived it."—Grant, 246; Wilcox, 265.

In the *King* vs. *Gaskin*, a return (to a *mandamus*, to restore,) was held insufficient, because it did not state that the party had been summoned to answer the charge before he was removed.—8 T. R., 209.

Lord Kenyon, C. J., said: "If we were to hold this return to be sufficient, we should decide contrary to one of the first principles of justice: '*Audi alteram partem.*' It is to be found at the head of our criminal law, that every man ought to have an opportunity of being heard before he is condemned, and I should tremble at the consequences of giving way to this principle." Grose, J., said: "The offences charged are abundantly sufficient to warrant the removal; but the present proceeding is informal, and the return to the *mandamus* insufficient."

It is contended, on the part of the respondents, that this rule, if it exists at all, is not applicable, "because the cause of removal is entirely disconnected from the person of the officer, his reputation, character or conduct," and that "it existed in the fact that the officer was elected in derogation of the rights of the Board in office at the date of the Ordinance."

Even if this applied to Mr. Hughes, (who, in fact, was elected in 1867,) it cannot change the principle. Any officer, no matter by what Council elected, then representing the corporation, had the right to a hearing before amotion.

It is possible he might not have been able so to impress the body charged with a decision as to lead to a conclusion different from that which they attained, nor is it likely that, in such an event, a resort to the Court would have resulted in any remedy which could have inured to his benefit; but still I am not satisfied that I can sustain the proceeding in a public body, acting in at least a *quasi* judicial character, which condemns a citizen without the opportunity of a hearing and defence.

In my judgment, the respondent gains no strength from the Act (No. 6) "regulating the tenure of certain offices, and appointments

thereto, and for other purposes," passed on the 15th August, 1868. Acts of 1868, p. 4.

It is not necessary that I should express, here, my opinion whether the said Act was intended rather to extend than to restrict the tenure by which the various offices to which it refers were held, nor whether it is to be considered as referring alone to officers whose "election or appointment" is provided for under the new Constitution, nor what effect is to be given to the words "election or appointment and qualification according to law," therein used. If the relator was removed without authority of law, there was no vacancy to be supplied; and, in my view, the State is entitled to judgment of ouster against the respondent.

It is, therefore, ordered, that the respondent, Patrick J. Coogan, do not in any manner further intermeddle with, or concern himself about. the said office of City Assessor for the city of Charleston, or with the duties, rights, books and property of the said office, but that he be absolutely adjudged and excluded from exercising or using the same, or any of them, for the future, and that he do abstain from doing or performing, or assuming to do or perform, any act or acts whatsoever in any manner pertaining to the said office, on pain of contempt of the Court.

Let all the papers be filed in the office of the Clerk of the Court for Charleston County.

In the cases of Champlin and Addison the facts, pleadings and judgment of the Chief Justice were the same as in Coogan's case, except that in Champlin's case the office in question was that of Assistant Assessor of the city of Charleston, and that, at the time of Champlin's election, it was filled by Charles P. Frazer, and, in Addison's case, the office was that of City Sheriff, and that, at the time of Addison's election, it was filled by P. C. Guerry, and in each case the incumbent was elected by the City Council on the 20th November, 1866, to hold for the term of four years.

*Corbin*, for plaintiffs in error.

*Lesesne & Miles*, contra.

May 12, 1870.   The opinion of the Court was delivered by

WILLARD, A. J.   The three cases above entitled involve the same question.   In each there has been judgment of ouster in *quo warranto*.   Coogan claims to hold the office of Assessor of Charleston, Champlin that of Assistant Assessor of Charleston, and Addi-

son that of City Sheriff for the city of Charleston, each having been elected to the respective offices claimed by them on the 6th day of July, 1869, by the City Council of Charleston. The authority for the election, in each case, was an Ordinance of the City Council, ratified May 20, 1869, declaring such offices vacant. At the time of the adoption of such Ordinance, the offices in question were respectively filled as follows: That of Assessor, by W. N. Hughes, elected by the City Council, on the 11th of December, 1867, for four years, and also appointed to the same office by the military commander of the Second Military District; that of the Assistant Assessor, by C. P. Frazer, elected by the City Council, November 20, 1866, for four years; and that of City Sheriff, by P. C. Guerry, elected by the City Council, November 20, 1866, for four years. Inasmuch as, in each case, the term of the former incumbent was unexpired as it existed at the time of his election, the question is presented whether the Ordinance declaring vacant such offices was passed with competent authority; whether the act of election that ensued from its provisions, and under which the plaintiffs in error—the defendants below—claim to retain their offices, was valid and effectual.

The cases were originally heard before the Chief Justice, sitting at Chambers, under the authority conferred upon the Justices of the Supreme Court by the sixth Section of the "Act to organize the Supreme Court."—Spe'l Ses., 1868, 73. The judgment in the cases established the right of such former incumbents as against the plaintiffs in error, and ordered the plaintiffs in error to vacate such offices, of which they were in possession, in favor of such former incumbents.

It will not be necessary to consider the question whether, in the absence of special authority, the City Council, in virtue of their authority and control over purely municipal offices, created and regulated by Ordinance alone, could, by the declarations of an Ordinance, put an end to the terms of the incumbents of such offices, so as to create a vacancy before the expiration of the time for which they were originally elected.

Under the view taken of the "Act regulating the tenure of certain offices and appointments thereto, and for other purposes," passed August 15, 1868, (Special Session, 1868, p. 11,) authority to adopt such an Ordinance and to proceed to election of successors to the offices in question was given.

Passing, for the present, the question whether the Legislature pos-

sessed competent authority in the given case, and we come directly to the consideration of the construction and effect of the Act regulating tenures as bearing on the case in hand. This Act declares as follows (Sec. 1): "That all State, District and municipal officers appointed by the General commanding the late Second Military District, in pursuance of, and under the authority of, the reconstruction laws of Congress, or appointed or elected under the late Provisional Government of South Carolina, and not removed by said General commanding, and whose places have not been filled by election or appointment, under the new Constitution, shall continue in office until their several offices are filled by the election or appointment and qualification, according to law, of the proper State, County and municipal officers, or until the duties of such offices have devolved, by authority of the General Assembly, upon other officers duly elected or appointed and qualified, according to law, under the new Constitution." The succeeding Sections of this Act relate to the time of filing official bonds; to validating the elections held in April and June, 1868; to provisions to secure the transfer of such offices to the persons entitled to them; and to the Court of Equity.

The offices in question are within the terms of the first Section. They are municipal offices. Those of Assistant Assessor and City Sheriff were filled during the Provisional Government that preceded the Military Government established under the Acts of Congress, commonly known as the Reconstruction Acts; the office of Assessor was filled under the authority of the Military Government. Although the act of election was performed by the City Council, yet, as it was political in its character, it must be referred to the then supreme authority within the State. Powers, rights and obligations resting in grant derive their force and effect from the nature and extent of the right and capacity of the grantor at the time of executing the grant; but political powers are referable to the present authority and consent of the supreme power of the State. Nor is the nature or limits of political power changed, whether reposed in the hands of an individual or body politic. It is evident, from the fact of municipal officers being included in Section 1, that the Legislature intended that the provisions of the Act should reach to persons holding office under appointment or election by municipal bodies, for, otherwise, the words of inclusion would be senseless and nugatory.

It is, in the sense so well conveyed by the maxim, *qui facit per*

*alium facit per se,* that the Legislature referred to elections and appointments by municipal bodies, as embraced in the general terms employed, to wit: "appointed by the General commanding," and "appointed or elected under the late Provisional Government."

The question then arises whether the Act under consideration must be deemed to have intended an immediate exercise of the appointing power in reference to the offices embraced in the first Section, as unfilled under the new Constitution; and the further effect, that the term of the former incumbent.should cease and determine upon such appointment being duly made, and qualification of the appointee thereunder.

The argument against such a construction must rest mainly upon the idea that the Legislature, not having so declared in terms, this Act ought to be read in connection with previous legislation, and so construed that whatever had been done thereunder might continue to stand. This is the ordinary rule of construction in the absence of repeal or repugnancy, but it admits of its exceptions.

This rule, to be applicable, must be found within the reasonable intent of the statute to which it is sought to apply it.

The general object of the statute must be first sought for in order to direct the implication as to its intent, and then the special purpose must be considered in order to ascertain the limits of such intent. The general object is best illustrated by the occasion that called it forth. The historic events with which the policy of this statute is interwoven are extraordinary beyond precedent. The domestic government was overturned by the military power of the United States. Martial government succeeded, based upon the laws of war, and the orders emanating from the military head of the nation. This was followed by a government professedly provisional, authorized by the National Executive, and resting upon an elective basis, incompatible with the pre-existing Constitution of the State, and emanating from the National Executive. Under this Government, a Constitution and laws, and election and appointments to office, succeeded. This was, in turn, displaced by a military government, established under the authority of the National Legislature. To this Government, succeeded the present Constitutional Government of the State. The Act in question was one of a series of measures intended to effect this last named change in the exercise of public authority. Its provisions are sweeping, and reach to all offices held under State authority not provided for under the Con-

stitution of 1868, including the offices created under municipal charters. It found many offices filled under an authority foreign to the domestic system of the State, and it is a necessary inference that it designed to bring back those offices, as to their incumbency, to proper relations to the sovereignty residing in the State, and now restored to full exercise. The most natural mode of doing this was to remove those officers who derived their authority under the pre-existing governments of the State, and to choose new officers through appropriate forms and proceedings. The general intent, thus inferentially drawn, is in harmony with the policy evinced by the Constitution itself, and by all the legislation that ensued under that Constitution.

The special object and intent of the Act, as included in the words "shall continue in office until their several offices are filled," &c., obviously was to substitute this Act as the authority for the continuance of such persons in office, in the place of the authority under which they had held previous to the passage of this Act. They would thus no longer hold as of the original tenure, by which they took the office, but under the Act as a provisional means of supplying the office with incumbents until there might be a due exercise of the proper electing or appointing power. Regarding this statute in this light, a vacancy existed, as it respects the formal tenure of the office, sufficient to warrant the exercise of the electing or appointing power, in whatsoever hands it might be lodged.

In some instances, as in the case of charter officers elected by the people, further legislation was needed to provide for the holding of a legal election, and that legislation was subsequently provided. The City Council not being limited as to the time or mode of proceeding to fill the offices thus declared vacant by any statute, no further legislation was requisite to enable them to proceed in the manner contemplated by the statute in question.

According to the view that has been taken of the effect of the Act regulating tenures, no doubt can exist as to the competency of the Legislature to act in the mode under consideration. In the absence of any constitutional limitation of their authority, in that respect, they could act upon the term of the incumbent, either by way of increasing or diminishing it. This is, in effect, what they have done.

It appears, therefore, that the plaintiffs in error are entitled to the respective offices claimed by them.

Coogan *vs.* State.

The judgment of ouster must be set aside and the proceedings dismissed.

*Carpenter,* J , sitting by appointment of the Governor in place of *Moses,* C. J., and *Wright,* A. J., concurred.